FILED
2017 Feb-13  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **GREGORY ALAN WARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  4:15-CV-0865-VEH** |
| | ) | |
| **CITY OF GADSDEN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MEMORANDUM OPINION**

## I.    INTRODUCTION

### A.    Summary of Mr. Ward's Claims

On May 26, 2015, Plaintiff Gregory Alan Ward ("Mr. Ward"), who is representing himself, initiated this job discrimination lawsuit against Defendant the City of Gadsden (the "City") arising under the Americans with Disabilities Act (the "ADA"), as amended by the ADA Amendments Act of 2008 (the "ADAAA"). (Doc. 1). Mr. Ward filed an amended complaint (Doc. 4) on July 2, 2015. While this amended pleading is not separated into numbered counts, a broad reading of it suggests that Mr. Ward is potentially asserting two claims against the City–one for discriminatory discharge (or failure to rehire) and the other for the failure to provide

him with a reasonable accommodation. (Doc. 4 at 2-3);[1] (*see also* Doc. 1-2 (attaching Mr. Ward's charge of discrimination filed with the EEOC on April 28, 2014)).

### B.  Summary of Pending Motions

Pending before the court is the City's Motion for Summary Judgment (Doc. 21) (the "Rule 56 Motion") filed on May 27, 2016. The City filed its brief (Doc. 22) and evidentiary submission (Doc. 23) on this same date. Mr. Ward initially responded to the Rule 56 Motion on June 10, 2016. (Doc. 24). On June 24, 2016, the court entered its customary *pro se* summary judgment scheduling order (Doc. 25) that gave Mr. Ward special notice of his right to additionally respond to the City's Rule 56 Motion with affidavits or other opposing evidence and warned him about the consequences of not adequately responding to it. Mr. Ward filed nothing further and the City filed its reply brief (Doc. 27) on July 25, 2016.

After reviewing the parties' filings and finding them to be substantially deficient as measured against the requirements mandated by Appendix II of the Uniform Initial Order (Doc. 11), the court entered an order (Doc. 28) that obligated the City to rebrief its Rule 56 Motion and permitted Mr. Ward to file a further response. (*Id.* at 4-5). The City filed its replacement brief (Doc. 29) on September 19, 2016. Mr. Ward first filed his response (Doc. 30) on November 1, 2016, and then

---

[1]  The page references to Doc. 4 correspond with the court's CM/ECF numbering system.

filed what appears to be a corrected response (Doc. 31) on November 3, 2016. The City, on November 8, 2016, moved to strike both of the responses (Doc. 32) (the "Strike Motion") as untimely and for other reasons. Finally the City filed its reply (Doc. 33) on November 8, 2016. For the reasons explained below, the City's Rule 56 Motion is due to be granted in part and denied in part. Further, its Strike Motion is due to be denied in part and otherwise termed as moot.

## II.    FACTUAL BACKGROUND[2]

Mr. Ward was hired as a part-time bus driver for the City in April of 2010. AF Nos. 1-2.[3] Sadly, in December 2011, his longtime life partner died of cancer. AF No. 3. One of Mr. Ward's supervisors–Misty Lemons ("Ms. Lemons")–gave Mr. Ward

---

[2] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[3] Under Appendix II of the court's Uniform Initial Order (Doc. 11) entered on September 4, 2015, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). The designation "AF" stands for admitted fact and indicates a fact offered by the City that it has adequately supported through citations to underlying evidence as Appendix II mandates. For Mr. Ward, more specifically, this means that even though he failed to address the factual section of the City's brief in support of its Rule 56 Motion, the court has independently reviewed the proof (*i.e.*, the City's evidentiary materials contained in Doc. 23) offered by the City to establish that proposed fact before accepting it as a fact admitted by Mr. Ward. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of the City's factual background as set forth in Doc. 29.

some time off from work for bereavement. AF No. 6.

Less than a year after his loss, in July 2012, Mr. Ward began seeing a psychiatrist affiliated with the Veterans Affairs Medical Center (the "VA") located in Gadsden, who treated him for depression. AF No. 4. Mr. Ward was prescribed Zoloft and other anti-anxiety medication. AF No. 5. Mr. Ward made Ms. Lemons aware of his treatment for depression. AF No. 6. Mr. Ward did this so that Ms. Lemons would know to adjust his work schedule around his doctor appointments if necessary. AF No. 7. Up to that point, Mr. Ward had not missed any work because of his depression. AF No. 8. Further, his depression did not cause him to miss work for the remainder of his time with the City with the exception of his doctor appointments. AF No. 8.

Approximately 15 months later from the death of his partner, in October 2013, Mr. Ward was involved in an incident that led to a disciplinary write-up. AF No. 9. More specifically, Mr. Ward was pulling the bus up to the crosswalk to allow the ramp to be lowered to discharge a wheelchair-bound passenger and he apparently "touched" a lady's car parked in front of where he had stopped the bus. AF No. 10. Mr. Ward testified that the lady came up and started "screaming and hollering and carrying on and calling [him] names[.]" AF No. 11. Mr. Ward tried to calm her down, but she was "just really belligerent." AF No. 11. Eventually, Mr. Ward "lost [his]

4

temper[,]" and told her, "Lady, you're crazy." AF Nos. 11-12. While Mr. Ward believes the lady had problems, he testified that, "I just didn't handle it right." AF No. 13.

Mr. Ward informed Ms. Lemons that he had handled the situation wrong and apologized. AF No. 14. Mr. Ward filled out a statement as did the lady. AF No. 14. Mr. Ward disagreed with the lady's version of events. AF No. 15. Ms. Lemons gave Mr. Ward a written warning on November 5, 2013. AF No. 16.

About November 11, 2013, Mr. Ward met with City's Director of Transportation, Meinrad Tabenqua ("Mr. Tabenqua"), as well as Ms. Lemons to discuss the October incident. AF No. 17; (*see also* Doc. 1-2 (identifying "Meinrad Tabenqua" as the City's Director of Transportation")). Mr. Ward shared with them that he had been emotionally upset and not sleeping well. AF No. 17. During this meeting, Mr. Ward asked about the mental health counseling benefit offered by the City. AF No. 18. Mr. Tabenqua told him he would check and see if counseling were available. AF No. 19. Mr. Ward later learned from Mr. Tabenqua that such benefits were only available for full-time employees of the City. AF No. 22.

Shortly thereafter, Mr. Ward was laid off from his position as seasonal employees customarily are, and, about a week later, on November 25, 2013, Mr. Tabenqua called and told Mr. Ward that he would not be hired back for any seasonal

positions. AF No. 20. Later, in 2014, Mr. Ward went to Nick Hall ("Mr. Hall"), the Director of Planning for the City and overseer of the City's transportation department, who told him that the risk management department had "redflagged" him because of his anger and having a concern about "somebody like that working for us." AF No. 21; (Doc. 23-10 at 1). According to Mr. Ward, Mr. Hall told him that because of Mr. Ward's status as a seasonal employee (*i.e.*, already subject to not returning to employment after layoff) the easiest thing for the City to do was to go forward with the Mr. Ward's layoff and then notify him that the City would not subsequently re-hire him as a part-time bus driver. AF No. 24.

## III.   STANDARDS

### A.   Summary Judgment Generally

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 2265 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks omitted). The party requesting summary

judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings in answering the movant.[4] *Id.* at 324, 106 S. Ct. at 2553. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the

---

[4] When *Celotex* was decided FED. R. CIV. P. 56(e) encompassed this express requirement, but now this concept is covered by the language provided for under FED. R. CIV. P. 56(c).

moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249, 106 S. Ct. at 2511.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2)

8

proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

### B.    Disability Discrimination

Regarding establishment of a *prima facie* case of disability discrimination under the ADA, the Eleventh Circuit has explained:

> The ADA mandates that employers shall not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims. *See Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996). Thus, Hilburn has the burden of proving a *prima facie* case of disability discrimination by a preponderance of the evidence, which requires a demonstration that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability. 42 U.S.C. §§ 12112(a); *see Morisky v. Broward County,*

80 F.3d 445, 447-49 (11th Cir.1996). Having concluded that Hilburn had not established any genuine issue of a material fact relating to the first *prima facie* factor of disability, the trial court did not address the last two factors. *See Hilburn*, 17 F. Supp. 2d at 1383. Therefore, we will limit our discussion to whether Hilburn can be considered disabled within the meaning of the ADA.

The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Additionally, Hilburn must establish that Murata had actual or constructive knowledge of the disability or considered her to be disabled. *Morisky*, 80 F.3d at 448.

*Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999)

(emphasis added).

The ADA defines a "disability" as:

**(A)** a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

**(B)** a record of such impairment; or

**(C)** being regarded as having such impairment.

42 U.S.C. § 12102(1).

The ADAAA broadens coverage under the ADA and provides in part that:

**(A)** The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

**(B)** The term "substantially limits" shall be interpreted consistently with

10

the findings and purposes of the ADA Amendments Act of 2008.

**(C)** An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

**(D)** An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

**(E)(i)** The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as–

> **(I)** medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;

> **(II)** use of assistive technology;

> **(III)** reasonable accommodations or auxiliary aids or services; or

> **(IV)** learned behavioral or adaptive neurological modifications.

42 U.S.C. § 12102(4)(A)-(E)(i).

The last stated purpose of the ADAAA calls for the EEOC to craft a less demanding definition of the term "substantially limits":

> **(6)** to express Congress' expectation that the Equal Employment Opportunity Commission will revise that portion of its current regulations that defines the term 'substantially limits' as 'significantly restricted' to be consistent with this Act, including the amendments

11

made by this Act.

Pub. L. No. 110-325, 122 Stat. 3553, 3554 § 2(b)(6) (2008).

## C. *Pro Se* Filings

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (citing *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991)). Accordingly, Mr. Ward's allegations arising out of his former employment with the City are not appropriately subject to dismissal simply because they lack procedural precision or completeness in the context of Rule 8 of the Federal Rules of Civil Procedure.

At the same time "if a [*pro se*] plaintiff pleads merely conclusory allegations [about his claims] and the defendant comes forward with affidavits setting out specific facts showing [why he cannot prevail on those claims], plaintiff cannot defeat summary judgment or dismissal for failure to state a claim by merely filing an affidavit that restates the conclusory statements asserted in the complaint." *Perry v. Thompson*, 786 F.2d 1093, 1094 (11th Cir. 1986). Similarly, "[i]f material undisputed facts show no cause of action or that summary judgment should be granted as a matter of law, the case can be disposed of[,] [and] [a] plaintiff may not frustrate this process by merely restating legal conclusions that he has alleged." *Id.* at 1094-95. However,

12

any "specific facts" pled in a *pro se* plaintiff's sworn complaint or affidavit must be considered in opposition to summary judgment.[5] *Id.* at 1095.

## IV.   ANALYSIS

### A.   The City's Rule 56 Motion

The City describes Mr. Ward's lawsuit as one involving a "claim that he is disabled and [that he] was terminated for that reason, with the City not offering a reasonable accommodation under the terms of the ADA." (Doc. 29 at 6). Mr. Ward does not dispute the City's understanding of the claims at issue in this action and similarly states in his amended complaint his belief that he "was discriminated against because of [his] disability, in violation of the [ADA], as amended." (Doc. 4 at 3). The court discusses the merits of Mr. Ward's disability-based discriminatory discharge claim first.

#### 1.   Mr. Ward's Discriminatory Discharge Claim

The initial part of the City's brief challenges Mr. Ward's ability to show a legally sufficient disability under the ADA to support his discriminatory discharge claim. (Doc. 29 at 6).

In order to establish a *prima facie* case of discrimination under the ADA, Cash must demonstrate that she (1) is disabled, (2) is a qualified

---

[5] Although Mr. Ward <u>signed</u> his amended complaint (Doc. 4 at 3), it is not a <u>verified</u> (sworn) pleading.

individual, and (3) was subjected to unlawful discrimination because of her disability. *See* 42 U.S.C. § 12112(a); *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996).

*Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). The ADA defines the first

element–proof of disability–as:

> **(A)** a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> **(B)** a record of such an impairment; or
>
> **(C)** being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1).[6]

Mr. Ward's amended complaint lacks clarity as to which of these disability prongs he contends are applicable in his case. Accordingly, it is appropriate to analyze the merits of each one. *See Cash*, 2331 F.3d at 1305 ("Cash did not clearly articulate which of the three statutory definitions of disability she was proceeding under, so we will examine each in turn.").

Mr. Ward premises his disability claim upon his diagnosis of depression in July of 2012. The City does not dispute the existence of this impairment. Instead, it contends that Mr. Ward "has failed to specify a major life activity that he is

---

[6] Before the passage of the ADAAA, this language was previously codified at 42 U.S.C. § 12102(2). *See Cash*, 231 F.3d at 1305 (quoting same language with citation to § 12102(2)).

substantially limited in, and . . . fail[ed] to point to any other evidence of an impairment limiting one or more major life activities." (Doc. 29 at 7). As the Eleventh Circuit discussed in *Cash*, the documented diagnosis of one or more impairments is insufficient for meeting the definition of disability under either § 12102(1)(A) or § 12102(1)(B) of the ADA:

> It is not disputed that Cash suffers from a number of medical conditions that could each be regarded as impairments. <u>The question, however, is whether these impairments substantially limit one or more major life activities</u>. We are guided on this issue by the regulations promulgated by the Equal Employment Opportunity Commission, which state that "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

231 F.3d at 1305 (emphasis added).

The City is correct that Mr. Ward has not expressly identified a major life activity that has been substantially limited by his depression. In the opening paragraph of his opposition, Mr. Ward counters the City's Rule 56 Motion by referring only to his medical diagnosis and treatment:

> I disagree with Attorney Howard's statement that I don't have a disability. I do not believe Mr. Howard has the qualifications necessary to make that judgment. I have been treated for depression by the VA since 2012.

(Doc. 31 at 1).

Nonetheless, keeping in mind his *pro se* status, the court concludes that a

reasonable reading of Mr. Ward's filings suggests that he is implicitly relying upon working as his requisite major life activity.[7] Even so, the record lacks sufficient evidence for a jury to reasonably conclude that Mr. Ward's depression substantially limited him in his ability to perform work as the EEOC has defined that concept within its post-ADAAA final regulations. More specifically, 29 C.F.R. § 1630.2(j)(1)(ii) states:

> An impairment is a disability within the meaning of this section <u>if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.</u> An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. <u>Nonetheless, not every impairment will constitute a disability within the meaning of this section.</u>

*Id.* (emphasis added).

For example, there is no record of Mr. Ward's missing a substantial amount of work as compared to most other people because of his depression or being disciplined substantially more than others due to missed days attributable to his treatment for depression. Indeed, as Mr. Ward pointed out in his opposition, "[a]lthough struggling with depression; my job became even more important to me and I looked forward to

---

[7] The *Cash* court noted that the United States Supreme Court, in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), expressed doubt about whether major life activities should include work. 231 F.3d at 1306 n.7. Nonetheless, the Eleventh Circuit saw no reason to reconsider its history of "entertaining such arguments . . . ." *Id. Sutton* was ultimately superseded by the ADAAA and, post-ADAAA, major life activities are statutorily defined to expressly include working. 42 U.S.C. § 12102(2)(A).

the companionship of my fellow employees and my special clients." (Doc. 31 at 2). While Mr. Ward did occasionally miss work to see his VA doctor, there is no indication that these missed days substantially impacted his overall ability to perform his job as compared to other people or even that those missed days led to his discharge.

Therefore, the court agrees with the City that Mr. Ward has not established disability under § 12102(1)(A) because he has not adduced sufficient evidence from which a reasonable jury could conclude that he was substantially limited in the major life activity of working at the time of his discharge. The court similarly rules that Mr. Ward has not adduced sufficient evidence showing a record of such an impairment to meet § 12102(1)(B). In reaching this conclusion, the court acknowledges that under "the rules of construction [to] apply when determining whether an impairment substantially limits an individual in a major life activity[,]" "'[s]ubstantially limits' is not meant to be a demanding standard" and that "the term . . . shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(i), (iv). However, at the same time, the statute still requires some degree of limitation in a major life activity in order for a plaintiff to be covered by § 12102(1)(A) or § 12102(1)(B) and, in this instance, Mr. Ward simply has not met this minimal

threshold. Accordingly, the City's Rule 56 Motion is due to be granted to the extent that Mr. Ward relies upon § 12102(1)(A) or § 12102(1)(B) in conjunction with the major life activity of working to meet the *prima facie* element of disability.

The regarded-as prong is a more complicated inquiry. "The final question . . . is whether [Mr. Ward] presented evidence that [the City] 'regarded' h[im] as having an impairment . . . ." *Cash*, 231 F.3d at 1306. The sole case that the City relies upon to show that Mr. Ward is not covered by the regarded-as prong is *Cash*. (Doc. 29 at 7). The *Cash* opinion, however, predates the ADAAA, which <u>significantly</u> transformed the regarded-as definition and made it <u>much</u> easier for a plaintiff to *prima facially* fit into this third disability category because proof that an employer perceives the plaintiff to be limited in a major life activity <u>is no longer required</u>:

**(3) Regarded as having such an impairment**

For purposes of paragraph (1)(C):

> **(A)** An individual meets the requirement of "being regarded as having such an impairment" <u>if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity</u>.

> **(B)** Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6

18

months or less.

42 U.S.C. § 12102(3) (emphasis by underlining added); *compare id.*, *with Cash*, 231 F.3d at 1306 ("In order for Cash to establish that APCO regarded her as substantially limited in her ability to work, she must prove that APCO considered her as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" (quoting pre-ADAAA version of 29 C.F.R. § 1630.2(j)(3)(i))). The City provides <u>no</u> analysis of whether Mr. Ward has met the regarded-as prong as redefined by the ADAAA and nakedly and incorrectly asserts that Mr. Ward's *prima facie* case fails because he has not shown "that he has been 'regarded' as having . . . an impairment" <u>limiting a major life activity</u>. (Doc. 29 at 6). Therefore, the Rule 56 Motion is due to be denied as undeveloped with respect to Mr. Ward's reliance upon § 12102(1)(C) to meet his *prima facie* case.

The second *prima facie* challenge raised by the City is tied to the affidavit testimony provided by the City's Planning Director, Mr. Hall. (Doc. 29 at 7-8); (*see also* Doc. 23-10 at 3-4 (discussing Mr. Hall's lack of knowledge about Mr. Ward's suffering from an impairment or disability when he made the decision not to return Mr. Ward to temporary/seasonal employment with the City). Mr. Ward was the person who "decided that it was in the best interest of the City to not have Mr. Ward

to return as a seasonal employee in the future" (Doc. 23-10 at 2) after learning about the admitted "verbal confrontation" Mr. Ward had had with a member of the public after being "involved in a minor collision." (*Id.* at 1, 2). In his affidavit, Mr. Hall affirms that he "was made aware of no disability or impairment suffered by Mr. Ward, nor of any requests that the City accommodate such a disability or impairment." (Doc. 23-10 at 3-4). Mr. Hall further swears that he did not "perceive [Mr. Ward] to have such a disability or impairment." (Doc. 23-10 at 4).

In light of the above undisputed evidence, the City contends that Mr. Ward's *prima facie* case fails because, when Mr. Hall "made his decision about [Mr. Ward] not coming back, he knew of no disability or impairment, nor of any accommodation requests for any such disability or impairment . . . . [and] [Mr. Ward] has offered nothing to the contrary." (Doc. 29 at 7-8). Unhelpfully, the City cites to no authority for the proposition that an ADA plaintiff must have sufficient evidence of a decisionmaker's awareness of an impairment prior to taking an adverse employment action to establish a *prima facie* case of disability discrimination. This court has, however, found controlling authority on the issue. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1175 (11th Cir. 2005) (recognizing that "an employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability[.]" (internal quotation marks omitted) (quoting *Morisky v. Broward Co.*, 80

F.3d 445, 448 (11th Cir. 1996) (alteration omitted) (quoting in turn *Hedberg v.*

*Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995))); *see also*

*Cordoba*, 419 F.3d at 1175 (recognizing unpublished panel's rejection of constructive

knowledge theory to satisfy *prima facie* element of decisionmaker's prior awareness);

*id.* at 1185 ("Once the issue is framed clearly, it is evident that an employee cannot

be fired 'because of' a disability unless the decisionmaker has *actual* knowledge of

the disability."). Therefore, the City's Rule 56 Motion is due to be granted as to its

alternative *prima facie* challenge of Mr. Ward's discriminatory discharge claim–Mr.

Hall's lack of actual awareness.[8]

### 2.   Mr. Ward's Failure To Reasonably Accommodate Claim

As analyzed above, the court has accepted for the purposes of the City's Rule

56 Motion that Mr. Ward is covered by the regarded-as definition of disability, but

not the other two categories. As a consequence of Mr. Ward's coverage limited to

§ 12102(1)(C), to the extent he has asserted a separate claim against the City for

failing to provide him with a reasonable accommodation, he is statutorily precluded

from pursuing such a claim as a result of changes provided for under the ADAAA.

In particular, the reasonable accommodations and modifications subpart clarifies:

---

[8]   The City's Rule 56 Motion does not develop a pretext challenge to Mr. Ward's discriminatory discharge claim.

> A covered entity under subchapter I, a public entity under subchapter II, and any person who owns, leases (or leases to), or operates a place of public accommodation under subchapter III, <u>need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section</u>.

42 U.S.C. § 12201(h) (emphasis added); *see also* 29 C.F.R. § 1630.2(o)(4) ("A covered entity . . . is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong (paragraph (g)(1)(iii) of this section).").

Alternatively, the court agrees with the City that Mr. Ward has not shown how a request for mental health benefits through the City (which he was not automatically eligible to receive because of his part-time status) "was specific enough to constitute a demand for a reasonable accommodation[,]" especially when Mr. Ward was eligible for and already was receiving mental health counseling from the VA. (Doc. 29 at 9). Therefore, the City's Rule 56 Motion is due to be granted on Mr. Ward's reasonable accommodation claim for these two independent reasons.

## B.   The City's Strike Motion

The City's Strike Motion seeks an order striking both of Mr. Ward's responses to its rebriefed Rule 56 Motion as untimely. (Doc. 32 at 1); (*see also* Doc. 28 at 5 (setting out schedule for parties to rebrief the City's Rule 56 Motion)). Alternatively,

the City requests that the court "strike particular portions of the . . . response[s]." *Id.*

Given that Mr. Ward is representing himself and that he missed his filing deadline of

October 19, 2016, by less than 30 days, the court has accepted and considered both

oppositions to the Rule 56 Motion and the first part of the City's Strike Motion is due

to be denied.

As for the City's alternative request, the court concludes that Mr. Ward's ADA

lawsuit substantively fails with or without considering those portions of his responses

that are specifically challenged by the City. Accordingly, the remainder of the Strike

Motion is due to be termed as moot.

## V.    CONCLUSION

As a result of the above analysis, the City's Rule 56 Motion is due to be

granted in part and denied in part. Further, the City's Strike Motion is due to be

denied in part and otherwise termed as moot. Finally, in the absence of any pending

claims remaining, the court will enter a separate final judgment order dismissing Mr.

Ward's lawsuit with prejudice.

**DONE** this the 13th day of February, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge